Affirmed and Memorandum Opinion filed April 27, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00184-CR

___________________

 

Lorenzo Blue, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 208th District Court

Harris County,
Texas



Trial Court Cause No. 1164206

 



 

 

MEMORANDUM OPINION

            Appellant Lorenzo Blue challenges his conviction for
aggravated robbery.  After a jury trial, the jury found appellant guilty and
assessed punishment at confinement for 15 years.  Appellant appeals contending (1)
the evidence is legally and factually insufficient to support the jury’s
verdict; and (2) the trial court erred in denying appellant’s motions for mistrial. 
We affirm.

 

Background

            On March 13,
2008, Anthony Garrett, the complainant, went to a Metro Mart to purchase some
items for his family.  After gathering his items, he attempted to pay for them
with a $100 bill.  The cashier informed him that he could not accept the
complainant’s payment because he did not have change for a $100 bill.  

The complainant exited the Metro Mart and approached
appellant, who was standing outside the store, and asked him if he had change
for a $100 bill.  Appellant responded that he did and took the $100 bill from
the complainant’s hand.  Appellant then walked over and got into a vehicle. 
The complainant followed appellant to the vehicle and said, “Never mind.  Just
give it back.”  Appellant exited the vehicle and said, “Hey, man.  I got that
burner.”  Appellant then lifted up his shirt and the complainant saw the butt
of a handgun in appellant’s waistband.  The complainant backed away, and
appellant got back into the vehicle and drove off.

The complainant then waited outside of the Metro Mart
for approximately 30 minutes and watched appellant drive by “about three
times.”  The complainant eventually observed appellant pull into an apartment
complex and approached him to retrieve his $100 bill.  Appellant refused to
return the money.  

The complainant then went back to his apartment and
called the police.  Officer Jorge Lopez went to the complainant’s apartment and
took the complainant’s initial statement along with a description of appellant
and the vehicle he was in.  

Appellant was indicted for the offense of aggravated
robbery on June 10, 2008.  After a jury trial, the jury found appellant guilty
and assessed punishment at confinement for 15 years.  The trial court signed
its judgment on February 19, 2009.  Appellant appeals from this judgment.

 

 

Analysis

Appellant presents four issues on appeal.  In his
first two issues, appellant contends that the evidence is legally and factually
insufficient to support his conviction for aggravated robbery.  In his third
and fourth issues, appellant contends that the trial court erred in denying his
motions for mistrial after (1) the prosecutor made an allegedly improper
argument during closing statements; and (2) the complainant allegedly commented
on the appellant’s state of mind, violating appellant’s right not to testify at
trial.  We address each in turn.

I.         Legal and
Factual Sufficiency

In reviewing legal sufficiency of the evidence, an
appellate court examines all of the evidence in the light most favorable to the
verdict to determine whether any rational factfinder could have found proof of
the essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Rollerson v. State, 227 S.W.3d
718, 724 (Tex. Crim. App. 2007).  The court does not sit as a thirteenth juror
and may not re-evaluate the weight and credibility of the record evidence or
substitute its judgment for that of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Reconciliation of conflicts in the evidence is within
the exclusive province of the factfinder.  See Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998).  The appellate court’s duty is not to
reweigh the evidence, but to serve as a final due process safeguard ensuring
only the rationality of the factfinder.  See Williams v. State, 937
S.W.2d 479, 483 (Tex. Crim. App. 1996).  An appellate court faced with a record
that supports conflicting inferences must presume — even if not obvious from
the record — that the factfinder resolved any such conflicts in favor of the
verdict and must defer to that resolution.  Jackson, 443 U.S. at 326; Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

In reviewing factual sufficiency of the evidence, an
appellate court must determine whether (1) the evidence introduced to support
the verdict is “so weak” that the factfinder’s verdict seems “clearly wrong and
manifestly unjust,” or (2) the factfinder’s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2008).  In a factual sufficiency review,
the court views all of the evidence in a neutral light.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (en banc).  If the court finds the
evidence factually insufficient, the court must remand the case for a new
trial.  Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

In order to declare that an evidentiary conflict
justifies a new trial, an appellate court must rely on some objective basis in
the record demonstrating that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  See Lancon v. State, 253
S.W.3d 699, 706-07 (Tex. Crim. App. 2008).  An appellate court should not
intrude upon the factfinder’s role as the sole judge of the weight and
credibility of witness testimony.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002).  The factfinder may choose to believe or disbelieve any
portion of the testimony presented at trial.  Bargas v. State, 252
S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en banc)).  Due
deference must be given to the factfinder’s determinations concerning the
weight and credibility of the evidence and reversal of those determinations is
appropriate only to prevent the occurrence of a manifest injustice.  Martinez
v. State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004).

An individual commits the offense of robbery if, in
the course of committing theft and with intent to obtain and maintain control
of property, that individual intentionally, knowingly, or recklessly causes
bodily injury to another or places another in fear of imminent bodily injury or
death.  Tex. Penal Code Ann. § 29.02(a) (Vernon 2003).  The offense becomes
aggravated robbery if the person committing the robbery causes serious bodily
injury to another or uses or exhibits a deadly weapon.  Id. § 29.03(a)
(Vernon 2003).  A firearm is a deadly weapon as a matter of law.  Id.
§ 1.07(a)(17)(A) (Vernon 2003).  “In the course of committing theft” is
defined as “conduct that occurs in an attempt to commit, during the commission,
or in immediate flight after the attempt or commission of theft.”  Id. §
29.01 (Vernon 2003).  

Appellant first argues that the evidence is legally and
factually insufficient to support his aggravated robbery conviction because he
did not use or exhibit a deadly weapon during the course of the offense.  Appellant
concedes that he took the $100 bill from the complainant, but argues that “there
was no . . . presence of a deadly weapon . . . until after the completed act of
theft.”  The State argues that the evidence is legally and factually sufficient
because appellant exhibited “a deadly weapon while in immediate flight from the
theft to deter [the complainant] from recovering the stolen money.”  

Neither the penal code nor case law defines
“immediate flight.”  Oggletree v. State, 851 S.W.2d 367, 369 (Tex. App.—Houston
[1st Dist.] 1993, pet. ref’d).   To determine whether the circumstances of this
case are such that appellant’s exhibition of a deadly weapon falls within the
ambit of “immediate flight” instead of occurring as part of a separate and
discrete incident, we conduct a comparative analysis of relevant case law.  See
id.   

In Oggletree, the appellant left a grocery
store carrying some items without paying for them.  Id. at 367-68.  Two
security officers chased him out of the store and stopped a person who was
working with appellant in the parking lot.  Id.  Oggletree dropped the
items and left the parking lot.  Id.  He returned brandishing a knife
before one of the security guards could pick up the stolen items.  Id.  The
court held that Oggletree’s actions constituted displaying a deadly weapon
during immediate flight after the attempted theft.  Id. at 370.

The facts of this case parallel those in Oggletree. 
In this case, the complainant approached appellant and asked him if he had
change for $100 bill.  Appellant grabbed the $100 bill and immediately got into
a nearby vehicle.  The complainant approached the vehicle and attempted to
retrieve the $100 bill.  Appellant exited the vehicle, and said, “Hey, man, I
got that burner.”[1] 
Appellant lifted up his shirt and the complainant saw the butt of a handgun
tucked into appellant’s waistband.[2]
 Appellant exhibited a firearm to facilitate his escape, and deter the
complainant from attempting to recover the $100 bill.  Appellant’s actions
constituted one continuous criminal episode, not a series of discrete
incidents.  See id.  Therefore, the evidence is legally
sufficient to establish that appellant exhibited a deadly weapon during the
course of a theft.  See id.  

Appellant bases his factual sufficiency challenge on
the same grounds.  Appellant argues that the evidence is factually insufficient
to establish that he exhibited a deadly weapon during the course of a theft
because “there is no doubt that a completed theft occurred before there was any
pretense of a weapon being used or exhibited[.]”  Appellant argues that the
complainant voluntarily handed the $100 bill to appellant, thus appellant
completed the offense of theft when he accepted the $100 bill with the intent
to keep it.  

Viewing the evidence in a neutral light, the jury could have found beyond a reasonable doubt
that appellant exhibited a deadly weapon during the course of a theft.  See
id.; Johnson, 23 S.W.3d at 11.  The
evidence supporting the verdict was not so weak that the verdict was clearly
wrong and manifestly unjust.  See Watson, 204 S.W.3d at
414-15.  

Appellant next argues that the evidence is legally and
factually insufficient because the complainant’s testimony was not credible.  

At trial the complainant testified that (1) he went
to a Metro Mart to purchase some items for his family on March 13, 2008; (2)
after gathering his items, he attempted to pay for them with a $100 bill but
the cashier informed him that he could not accept his payment because he did
not have change for a $100 bill; (3) he exited the Metro Mart and approached
appellant, who was standing outside the store, and asked him if he had change
for a $100 bill; (4) appellant responded that he did and took the $100 bill
from the complainant’s hand; (5) appellant then walked over and got into a vehicle;
(6) he followed appellant to the vehicle and said, “Never mind.  Just give it
back;” (7) appellant exited the vehicle and said, “Hey, man.  I got that
burner” and lifted up his shirt revealing the butt of a handgun in his
waistband; (8) he backed away when he saw the gun, and appellant got back into
the vehicle and drove off; (9) he waited outside of the Metro Mart for
approximately 30 minutes and watched appellant drive by “about three times;”
(10) he observed appellant pull into an apartment complex and approached him to
retrieve his $100 bill but appellant refused to return the money; and (11) he
went back to his apartment and called the police after appellant refused to
return the $100 bill.  

Viewing the evidence in the light most favorable to
the verdict, the jury could have found beyond a reasonable doubt that appellant
committed the offense of aggravated robbery.  See Jackson, 443
U.S. at 326; Evans, 202 S.W.3d at 161; Oggletree, 851 S.W.2d at
370.    

Appellant argues that the evidence was factually
insufficient because the complainant’s testimony at trial was inconsistent with
his initial description of the offense given to Lopez.  Lopez testified that
during his investigation the complainant told him that (1) appellant approached
him as he was walking to the Metro Mart; (2) appellant demanded his money; (3)
the complainant stated he did not have any money; (4) appellant raised his
shirt and revealed a gun; and (5) the complainant then handed over the money.    

Courts have routinely
held the jury is the sole judge of the facts, the credibility of the
witnesses, and the weight to be given the evidence.  Wyatt v. State, 23
S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29 S.W.3d 148,
151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  The jury may believe or
disbelieve all or part of any witness’s testimony.  Jones v. State, 984
S.W.2d 254, 258 (Tex. Crim. App. 1998).  The jury is in the best position to
evaluate the credibility of witnesses and the evidence, and we must afford due
deference to its determination.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006).  

Viewing the evidence in a neutral light, the jury could have found beyond a reasonable doubt
that appellant committed the offense of aggravated robbery.  See Johnson,
23 S.W.3d at 11; Oggletree, 851 S.W.2d at 370.  The evidence supporting the verdict was not so weak that the verdict
was clearly wrong and manifestly unjust.  See Watson, 204
S.W.3d at 414-15.

Lastly, appellant argues that the evidence is legally
and factually insufficient to establish that the complainant was “in fear of
imminent bodily injury or death.”  Specifically, appellant argues that the
complainant “was not in fear of the gun . . . because he did not go into any
safe area, but remained in the driveway by the street [for] 30-45 minutes to
see [appellant] again.  He went so far as to watch [appellant] pull into
another part of his apartment complex, and he walked over to see if he could
get the money back. . . .  This is not the reaction of a person who has been
placed in fear of his life in an aggravated robbery situation.”

The complainant testified that he backed up after
appellant exhibited the gun, and that he “was scared that [he] was going to get
shot because [he] wasn’t fixing to let nobody just walk away with [his] $100. 
So [he] was scared [he] was going to get shot because [he] couldn’t just leave
it alone.”  He testified that he would have continued to try to regain
possession of the $100 bill had appellant not exhibited a gun.  After the
complainant backed up, appellant drove away.  The complainant testified that he
waited outside of the Metro Mart for approximately 30 minutes and watched
appellant drive by “about three times.”  He testified that he “was hoping that
[appellant] would see me and eventually [appellant] would stop somewhere where I
could go and walk up on [appellant] and talk to [appellant] again and . . .
reason with [him].”  The complainant testified that he was “willing to try to
approach [appellant] again, knowing [he had] a gun . . . [b]ecause [he] didn’t
want to go home and tell [his] fiancée that [he] just lost $100 of her money .
. . .”  The complainant testified that he approached appellant at a nearby
apartment complex and told appellant, “I have a little boy at home.  That’s all
the money I have[,]” and tried to get some of his money back.  The complainant
testified, “[A]fter I saw that [appellant] didn’t care whether I had a child, .
. . didn’t care about my circumstances or anything like that, [appellant was]
just going to keep my money, and, basically, to hell with me, that’s when I
said, I’m not [going] to argue with the guy because he has a pistol.”                               

Viewing the evidence in the light most favorable to
the verdict, the jury could have found beyond a reasonable doubt that the
complainant was “in fear of imminent bodily injury or death.”  See Jackson,
443 U.S. at 326; Evans, 202 S.W.3d at 161.  

Viewing the evidence in a neutral light, the jury could have found beyond a reasonable doubt that
the complainant was “in fear of imminent bodily injury or death.”  See Johnson,
23 S.W.3d at 11.  The evidence supporting the
verdict was not so weak that the verdict was clearly wrong and manifestly
unjust.  See Watson, 204 S.W.3d at 414-15.

We overrule appellant’s first and second issues.

II.        Motions for
Mistrial

            Appellant
next argues that the trial court erred in denying his motion for mistrial after
the prosecutor stated the following during closing argument of the
guilt-innocence phase of appellant’s trial: “Ladies and gentlemen, I ask you to
go back there, listen to the — go back over the evidence, talk about it,
determine whether you believe [the complainant].  Because, ladies and
gentlemen, I submit to you he got up there and he told you the truth.”  The
trial court sustained appellant’s trial counsel’s timely objection that this
statement constituted improper jury argument, and instructed the jury to
disregard the statement as requested by appellant’s trial counsel.  Appellant’s
trial counsel then moved for a mistrial, which the trial court denied.

Proper jury argument generally falls within one of
four general areas: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) answer to argument of opposing counsel; and (4) plea for
law enforcement.  Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App.
2008).  Error exists when facts not supported by the record are interjected in
the argument, but such error is not reversible unless, in light of the record,
the argument is extreme or manifestly improper.  Id.  To determine
whether jury argument is improper, we assess the argument as a whole and in context.  Cruz v. State,
225 S.W.3d 546, 549 (Tex. Crim. App. 2007).  

Appellant argues that the complained of argument
constitutes improper bolstering of the complainant’s credibility by the State. 
Appellant asserts that “[i]t is improper for a prosecutor to inject her
personal opinion about the truthfulness of the complainant’s testimony in
statements to the jury.”        

Preliminarily, the State argues that “[a]ppellant
failed to properly preserve his complaint by failing to object each time the
allegedly impermissibly argument was made.”  In order to preserve error, a
party must make a timely and specific objection when improper evidence or
argument is presented.  Tex. R. App. P. 33.1.  A party must object every time
allegedly inadmissible argument is made.  See Fuentes v. State, 991
S.W.2d 267, 273 (Tex. Crim. App. 1999); Valdez v. State, 2 S.W.3d 518,
521-22 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  When the parties
present the same evidence or argument to the jury elsewhere during trial
without objection, no reversible error exists. Valle v. State, 109
S.W.3d 500, 509-10 (Tex. Crim. App. 2003).[3]

During closing arguments, counsel for the State made
the following statements regarding the complainant’s credibility: (1) “It’s
your job to determine whether you
believe he was telling you the truth.  Ladies and gentlemen, he got up there and he was earnest and
he told you exactly what
happened.  He even admitted, ‘I might be a little vague on some of the facts.  It was close to a year ago.’  He
didn’t have to admit that to
you, but
he did because he wants you to
know that he’s telling
you the truth[;]”
(2) “If he was lying, he would make himself look like, Oh, I was just standing there,
meekly asking for his money back.  No, he told you the truth;” and (3) “He’s
telling you the truth.  He didn’t have to tell you that when he got to the
apartment, he called his brother.  And his brother said, ‘Oh, I’m coming over.  We’re
going to take care of this.’  He didn’t have to tell you they were going to
handle it the street way.  That doesn’t help him, but he told you that because
it’s the truth.”  Appellant did not object to any of these statements.

Appellant failed to preserve error for our review
because he failed to object each time the State made comments like the one
about which he now complains.  Even if we assume that the comment was improper
bolstering of a witness’s credibility, appellant has waived any error regarding
the State’s closing argument.  See Valle, 109 S.W.3d at 509-10.

In any event, the alleged improper argument was
proper because it was made in response to appellant’s trial counsel’s argument
that the complainant was not a credible witness.  During closing argument,
appellant’s trial counsel argued as follows: “[The] sufficiency [of the
evidence] is based entirely upon the credibility of [the complainant].  And I
submit to you that there are two things present in this case which cast doubt
upon the credibility of [the complainant] . . . prior inconsistent statements
and . . . prior inconsistent conduct.”  Appellant’s trial counsel then attacked
the credibility of the complainant on these two bases.    

The State’s alleged improper argument was made in
response to appellant’s trial counsel’s argument that the complainant was not a
credible witness.  Therefore, the State’s comments were within one of the four
permissible areas of jury argument because they were an answer to appellant’s
trial counsel’s argument.  See Brown, 270 S.W.3d at 570; Mijores
v. State, 11 S.W.3d 253, 257-58 (Tex. App.—Houston [14th Dist.] 1999, no
pet.).     

In his fourth issue, appellant argues that the trial
court erred in denying his motion for mistrial after “the complainant commented
on the appellant’s state of mind.”  During trial, the State asked the
complainant, “When you were down here, doing the diagram, showing the jury the
scene, you told the defense attorney you didn’t want to be ‘left out.’  About being
‘left out.’  What did you mean by that?”  The complainant responded, “I didn’t
want to be — what that means is it’s, like, stuck out.  In my neighborhood,
like, where I’m from, when you say stuck out — and the defendant can probably
tell you —[.]”  Appellant’s trial counsel objected stating, “I’m going to
object to that sidebar from the witness stand.”  The trial court sustained the
objection and granted appellant’s trial counsel’s request that the jury be
instructed to disregard “that last phrase.”  Appellant’s trial counsel then
moved for a mistrial, which the trial court denied.

As a threshold matter, the State argues that any
“error was waived . . . because the objection [at trial] does not correspond to
the argument on appeal.”  A party must preserve error for appeal by a proper
objection and an adverse ruling on that objection.  Tex. R. App. P. 33.1; Tex.
R. Evid. 103(a).  Arguments on appeal must comport with the objection at trial
or the error is waived.  Dixon v. State, 2 S.W.3d 263, 273 (Tex. Crim.
App. 1998) (en banc); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim.
App. 1995) (en banc) (to preserve error for appellate review, complaint on
appeal must comport with objection at trial, and objection stating one legal
theory may not be used to support a different legal theory on appeal). 
Appellant’s argument on appeal does not comport with his objection at trial. 
Therefore, the claimed error is waived.  Dixon, 2 S.W.3d at 273; Broxton,
909 S.W.2d at 918.      

Appellant’s complaint provides no basis for reversal
even if it had been preserved.  To
determine whether a remark violated a defendant’s right against
self-incrimination, we must look at the challenged language from the jury’s
standpoint, and the implication that the remark referred to the defendant’s
failure to testify must be clear.  Bustamante v. State, 48
S.W.3d 761, 765 (Tex. Crim. App. 2001).  It is not sufficient that the language
might be construed as an implied or indirect allusion to the defendant’s
failure to testify.  Id.  We must determine whether the remark “was
manifestly intended or was of such a character that the jury would necessarily
and naturally take it as a comment on the defendant’s failure to testify.”  Id.


Reviewing the complainant’s remark from the jury’s
standpoint, we conclude that the remark was not “intended or of such a
character that the jury would necessarily and naturally take it as a comment on
[appellant’s] failure to testify.”  See id.  The remark merely suggested
that appellant probably knew what the phrase “left out” meant as used by the
complainant.  

We overrule appellant’s third and fourth issues.

Conclusion

            We affirm
the trial court’s judgment.

 

                                                                                    

                                                            /s/                    William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Chief
Justice Hedges and Justices Yates and Boyce.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 









[1] The complainant testified
that a “burner” is a gun.  





[2]
There is no requirement that a victim must see
the entire weapon,
or any particular part of it, to identify it as a pistol.  Jones v.
State, 810 S.W.2d 824, 827 (Tex. App.—Houston [14th Dist.] 1991, no pet.).  





[3] There
are two exceptions to the continuous-objection requirement: the appellant can (1)
obtain a running objection, or (2) request a hearing outside the jury’s
presence.  Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App.
2003).  Appellant did neither in this case.